**IMPORTANT NOTICE:** Courtesy copies of documents you file should NOT be provided to any judge. All communications with the court shall ONLY be through documents filed with the Clerk of Court.

RECEIVED
IN ALEXANDRIA, LA
AUG 13 2010
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **LARRY GENE BAILEY, JR.** BOP#05536-085 | DOCKET NO. 10-CV-1096; SEC. P |
| **VERSUS** | JUDGE DEE D. DRELL |
| **U.S.P. POLLOCK & STAFF, ET AL.** | MAGISTRATE JUDGE JAMES D. KIRK |

**REPORT AND RECOMMENDATION**

Before the court is a civil rights complaint filed *in forma pauperis* by pro se Plaintiff Larry Gene Bailey, Jr., pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics[1]. Plaintiff is an inmate in the custody of the Bureau of Prisons (BOP) and is currently incarcerated at the Federal Correctional Institute in Beaumont, Texas (FCI Beaumont). At the time of filing, he was incarcerated at FCI Sheridan. However, he complains about his custody classification, place of incarceration, and the defendants' failure to adequately sanction an inmate who attacked him. Plaintiff names as defendants the United States Penitentiary Pollock, Ms. Million, Officer Kilgore, Mr. Angus, Mr. Mills.

This matter has been referred to the undersigned for review,

---

[1] In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C.A. § 1983.

report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

## Factual Background

Plaintiff complains that he spent the last three years in federal special housing units of five different institutions, all because he refused to have sex with men.

He alleges that, in August or September 2006, he was housed at FCI Sheridan, Oregon, with an inmate who "ran a store out of the cell." The cell mate had a large pornography collection, which he tried to entice Plaintiff into viewing. Plaintiff alleges that the cell mate tried to kiss him several times. Finally, Plaintiff asked the cell mate if he was trying to have sex with Plaintiff. The cell mate "flipped out" and the two began to fight. At the end of September 2006, Plaintiff was moved two cells over into another cell.

Plaintiff's next cell mate was Inmate O'Brien. Plaintiff alleges that although O'Brien claimed to be heterosexual, he made advances at Plaintiff and wanted to kiss him. Plaintiff alleges that one night, after using heroin, O'Brien tried to climb into Plaintiff's bed, and the two "scuffled." The next morning, Plaintiff requested another cell change from Counselor Mr. Angus. Angus reported that he was not doing any cell changes that day, and Plaintiff replied, "You make me sleep another night in that cell and there may only be one inmate alive in the morning." Plaintiff

received a disciplinary report for the threat, and convicted and sentenced for the violation.[2] [Doc. #1, p.7] His security rating was raised; and, Plaintiff was informed that he was being transferred from the Federal Correctional Institution to a United States Penitentiary. According to Plaintiff, that meant that he would "have to deal with twice the amount of homosexuals...." [Doc. #1, p.7] Plaintiff claims that, if Mr. Mills had given Plaintiff credit for his forty hour drug course, Plaintiff's point level would not have been high enough to send him to a U.S. Penitentiary. He also claims that he was actually transferred from Sheridan because he was of "no use" to them.

In September or October 2007, Plaintiff was transferred to FCI Dublin, California. He remained there for one week and was faced with some "sexual propositions" that made him angry. From Dublin, Plaintiff was transferred to U.S.P. Atwater; he was interviewed and placed in administrative detention. Plaintiff informed his counselor that he would not go into the general population for fear of what he would do or have done to him by homosexuals. [Doc. #1, p.8] Plaintiff remained at U.S.P. Atwater for one and a half years, and he completed the Release Preparation Program. Plaintiff was mostly housed alone at Atwater; however, he had a cell mate at one time who called himself "Struggle." Plaintiff alleges that

---

[2] Plaintiff also mentions that he lost his prison job at FCI Sheridan because he cut a plastic bucket in half for his friend.

"Struggle" tried to entice Plaintiff into sexual acts.

Plaintiff states that in March 2009, he was sent to FCI Herlong, California, but only for a short time. At the end of December 2009, Plaintiff was shipped to U.S.P. Pollock, where he "began battling with staff to stay out of general population...." [Doc. #1, p.10] At the end of 2009, Plaintiff was transferred to USP Pollock. There, Plaintiff "began battling with staff to stay out of the general population." [Doc. #1, p.10] Plaintiff states that he informed the Pollock staff "about the trouble" Plaintiff has with homosexuals, and he thought that they understood.

However, within a week, Plaintiff was informed by a guard that he was being moved to general population. Plaintiff refused, and the next day, he received an incident report. Plaintiff lost telephone and commissary privileges. Plaintiff says that this did not bother him at all. So, the next week, he was again told that he was moving to the general population, Plaintiff against said, "No, I am not!" Ms. Longmore visited Plaintiff, and Plaintiff "had some harsh words for her." Plaintiff explained that he would either have to kill or get killed to avoid having sex with another man.

Plaintiff remained in the Special Housing Unit with his cell mate, Inmate Gomez. On April 20, 2010, Plaintiff was attacked by Gomez directly in front of Officer Kilgore. He suffered a black eye and a bruised kidney. Gomez was moved to the next cell.

4

Plaintiff wrote a grievance complaining that Gomez did not receive an incident report for attacking Plaintiff. He later complained that it took 144 hours for Gomez to receive his incident report.

On April 28, 2010, Lt. Jones informed Plaintiff that he was being transferred from the penitentiary to a Federal Correctional Institution.

## Law and Analysis

Plaintiff complains that his custody classification level was raised because he did not want to have sexual intercourse with a man. However, it is apparent from Plaintiff's allegations that he was disciplined because he threatened to kill his cell mate. Plaintiff admits that he told an officer, "You make me sleep another night in that cell and there may only be one inmate alive in the morning." [Doc. #1, p.7] First, Plaintiff does not have a constitutional right to be housed at a particular institution. See Sandin v. Conner, 515 U.S. 472, 484 (1995). In general, inmates do not have a protected property or liberty interest in their custodial classifications. Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999); Moody v. Baker, 857 F.2d 256, 257-58 (5th Cir.), cert. denied, 488 U.S. 985 (1988). "[I]t is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status.'" Id. "Prison officials should be accorded the widest possible deference in the application of policies and practices

5

designed to maintain security and preserve internal order." Id. at 1251 (citing Bell v. Wolfish, 441 U.S. 520, 547 (1979)). Therefore, Plaintiff does not state a claim for which relief could be granted with regard to his custodial classification level OR his place of confinement. He has not alleged the violation of any civil right in that regard. The Court does not and can not tell the Bureau of Prisons at which facility it should house its prisoners.

Plaintiff's other complaint is that it took the defendants one hundred forty-four hours to issue a disciplinary write-up to his assailant, Gomez. Plaintiff's complaint is frivolous. Plaintiff has no constitutional right to request or insist upon disciplinary charges being brought against another inmate. Also, the delay in charges being brought against another inmate raises no constitutional issue as to Plaintiff. "Except in extreme circumstances", the "federal courts are reluctant to interfere" with matters of prison administration and management, such as prison discipline and classification of inmates. See Young v. Wainwright, 449 F.2d 338, 339 (5th Cir. 1971).

Plaintiff simply has no constitutional right to a lower security classification, even if he believes he has met all of the Bureau of Prison's requirements. His classification was raised because of disciplinary infractions, which Plaintiff does not deny. There is no right to be housed at any specific BOP institution,

either, regardless of the classification. Finally, Plaintiff has no constitutional right to insist upon disciplinary charges being brought against another inmate.

## Conclusion

Plaintiff submitted a lengthy complaint, as well as several letters to the Court. He has presented the best case that could be presented by him. Accepting all of Plaintiff's allegations as true, for the reasons stated herein, Plaintiff's complaint is frivolous and fails to state a claim for which relief can be granted.

Accordingly, **IT IS RECOMMENDED** that Plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).

**Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.**

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by**

Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this 13th day of August, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE